**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| San Carlos Irrigation and Drainage District, individually and on behalf of its landowners within the San Carlos Irrigation Project,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>United States of America, et al.,<br><br>　　　　　Defendants. | No. CV-05-937-PHX-DGC<br><br>**ORDER** |

Pending before the Court is Defendants' motion to dismiss and/or transfer. Doc. #16. For the reasons set forth below, the Court will grant the motion to dismiss and deny the motion to transfer.

## Background

Plaintiff San Carlos Irrigation and Drainage District contains 50,000 acres of non-Indian land within the San Carlos Irrigation Project ("Project"), a federal irrigation project that also serves 50,000 acres of land on the Gila River Indian Reservation. Defendants are responsible for the operation and maintenance ("O&M") of the Project pursuant to various agreements, statutes, and regulations. This action principally involves disputes regarding the amount of O&M costs and the process by which Plaintiff is charged for them.

Plaintiff commenced this action by filing a complaint and motion for injunctive relief on March 29, 2005. Docs. ##1-3. The complaint alleges that the action arises under the Constitution of the United States and various federal statutes, including the Administrative

Procedure Act ("APA"), which permits judicial review of certain federal agency actions. Doc. #1 ¶ 1. The complaint purports to state ten claims and seeks injunctive, declaratory, and other non-monetary relief. *Id.* ¶¶ 77-129.

The Court denied Plaintiff's request for injunctive relief on count one of the complaint on April 5, 2005. Doc. #9. Following a case management conference on May 11, 2005, the Court ordered the parties to brief jurisdictional issues raised by *Tucson Airport Authority v. General Dynamics Corp.*, 136 F.3d 641 (9th Cir. 1998). Docs. ##11-13.

Defendants filed the present motion and a supporting memorandum. Docs. ##16-17. Defendants move the Court to either dismiss the action for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) or transfer it to the Court of Federal Claims pursuant to 28 U.S.C. § 1631. *Id.* Plaintiff has filed a response and Defendants have filed a reply. Docs. ##18, 21.[1]

**Discussion**

**I.     The Motion to Dismiss.**

Plaintiff has the burden of establishing the Court's jurisdiction. *See Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990) ("The party asserting jurisdiction has the burden of proving all jurisdictional facts."); *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("Federal courts are courts of limited jurisdiction. . . . It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.") (citations omitted). Plaintiff alleges that the Court has subject matter jurisdiction under 28 U.S.C. § 1331, which provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Doc. #1 ¶ 1. The jurisdictional analysis cannot focus solely on § 1331, however, "because the claims in this case are . . . against the federal government, and thus are barred by sovereign

---

[1] Defendants have withdrawn their motion with respect to count seven of the complaint, an alleged violation of the White-Leavitt Act, 25 U.S.C. § 389. Doc. #21 at 12.

immunity unless the government has consented to suit." *N. Side Lumber Co. v. Block*, 753 F.3d 1482, 1485 (9th Cir. 1985); *see Holloman v. Watt*, 708 F.2d 1399, 1401 (9th Cir. 1983) ("Section 1331 does not waive the government's sovereign immunity from suit.").

The APA waives the sovereign immunity of the United States for certain claims brought under § 1331. *See Westlands Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 673 (9th Cir. 1993). Section 702 of the APA provides:

> An action in a court of the United States seeking relief other than monetary damages and stating a claim that an agency or an officer or employee thereof acted or failed to act . . . shall not be dismissed nor relief therein be denied on the ground that it is against the United States . . . . Nothing herein . . . confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

5 U.S.C. § 702. In addition, § 704 of the APA provides that "[a]gency actions made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. Thus, the APA waives sovereign immunity for Plaintiff's claims if (1) the claims are not for money damages, (2) an adequate remedy for the claims is not available elsewhere, and (3) the claims do not seek relief expressly or impliedly forbidden by another statute. *See Tucson Airport Auth.*, 136 F.3d at 645.

Defendants argue that Plaintiff's claims are barred by the third prong of this test because they are contractually based and thus impliedly forbidden by the Tucker Act, 28 U.S.C. § 1491. Doc. #17 at 9-11 (citing *Tucson Airport Auth.*, 136 F.3d at 645).[2] Plaintiff argues that its "claims are based solely upon statutes, regulations, and other sources of federal law" and that the Tucker Act does not preclude a claim brought under the APA that is "contract-related" but that ultimately rests on statutory rights. Doc. #18 at 1-2, 8.

---

[2] Defendants contend that counts two and three of the complaint violate the money damages limitation on APA jurisdiction. Doc. #16 at 11 n.3. The Court disagrees. Plaintiff seeks declaratory and injunctive relief, an adequate remedy for Plaintiff's claims is not available elsewhere, and "the fact that a judicial remedy may require one party to pay money to another is not sufficient reason to characterize the relief as 'money damages.'" *Bowen v. Massachusetts*, 487 U.S. 879, 893 (1988).

The Tucker Act gives the Court of Federal Claims jurisdiction over "any claim against the United States founded . . . upon any express or implied contract with the United States[.]" 28 U.S.C. § 1491(a)(1). The Act permits the Court of Federal Claims to award money damages, but "'impliedly forbids' declaratory and injunctive relief and precludes a § 702 waiver of sovereign immunity." *N. Side Lumber*, 753 F.2d at 1485; *see Tucson Airport Auth.*, 136 F.3d at 646; *Spectrum Leasing Corp. v. United States*, 764 F.2d 891, 893 (D.C. Cir. 1985) ("It is clear from the APA's legislative history that section 702's waiver of sovereign immunity may not be used to circumvent the jurisdictional and remedial limitations of the Tucker Act."). Thus, in a case such as this where Plaintiff is seeking declaratory and injunctive relief, the Court must determine whether Plaintiff's claims are contractually or statutorily based. If contractually based, the Court lacks jurisdiction. *See Tucson Airport Auth.*, 136 F.3d at 646 (citing *N. Star Alaska v. United States*, 14 F.3d 36, 37 (9th Cir. 1994) ("*N. Star Alaska III*")).

Whether or not claims are contractually based for purposes of the Tucker Act "'depends both on the source of the rights upon which [P]laintiff bases its claims, and the type of relief sought (or appropriate).'" *Doe v. Tenet*, 329 F.3d 1135, 1141 (9th Cir. 2003) (quoting *Megapulse v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982)), *rev'd on other grounds*, *Tenet v. Doe*, 125 S. Ct. 1230 (2005); *see N. Star Alaska III*, 14 F.3d at 37 (adopting the *Megapulse* test). Where claims asserted in district court are based on a contract, seek a declaration of contract rights, or do not exist independent of a contract, they are barred by the Tucker Act. *Tucson Airport Auth.*, 136 F.3d at 646-47.

**A.      Counts Two, Four, Six, Eight, and Nine.**

Counts two, four, six, eight, and nine allege violations of or seek relief under the Repayment Contract between Plaintiff and the United States. *See* Doc. #1 ¶¶ 87-88, 89(b)(1), 97(a), 104-05, 107(a)(1), 113, 120, 122-23. Plaintiff nonetheless argues that these claims are not based on contract for purposes of the Tucker Act because the Repayment Contract has been incorporated into the Code of Federal Regulations. Doc. #18 at 2-3, 8-10 (citing 25 C.F.R. § 137.4; *N. Side Lumber*, 753 F.3d at 1485).

- 4 -

1	The Court disagrees. The Code of Federal Regulations provides that the
2	administration, rights, obligations, and responsibilities of the Project, including O&M
3	assessments, are governed by the 1924 Act and the Repayment Contract. *See* 25 C.F.R. §§
4	137.4, 171.1. The terms of the Repayment Contract are not independently set forth in the
5	regulations; rather, the regulations refer to the contract as the source of rights and
6	obligations between the parties. The counts in question rely primarily on the terms of the
7	Repayment Contract, and the Court cannot conclude that these claims are based on federal
8	law merely because the contract is identified in federal regulations as the source of the
9	parties' rights. The claims "do not exist independent of" that contract. *Tucson Airport*
10	*Auth.*, 136 F.3d at 647; *see also Spectrum Leasing*, 764 F.2d at 894 ("Spectrum seeks an
11	injunction requiring the government to pay monies owed for computer hardware. The right
12	to these payment is created in the first instance by the contract, not by the Debt
13	Collections Act. The DCA, even if it applied, confers no such right in the absence of the
14	contract itself."); *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 77-78 (D.C. Cir. 1985)
15	("The question presented by the complaint could be phrased as whether the contract
16	forbids termination under these conditions. That the termination also arguably violates
17	certain other regulations does not transform the action into one based solely on those
18	regulations."). Because counts two, four, six, eight, and nine are founded primarily on the
19	Repayment Contract, the Tucker Act bars this Court from proceeding, the APA therefore
20	does not waive sovereign immunity, and the Court lacks subject matter jurisdiction. *See*
21	*id.*

22	Plaintiff's reliance on *North Side Lumber* is misplaced. The plaintiff in that case
23	alleged that its contractual obligations could not be enforced by the government because
24	to do so would violate federal statutes. 753 F.2d at 1484. The Ninth Circuit held that the
25	Tucker Act did not limit the district court's jurisdiction over the plaintiff's claim because
26	it did "not seek a declaration of contract rights against the government. Rather, it ask[ed]
27	for a declaration that, whatever the content of those rights, federal statutes preclude[d] the
28	government from enforcing them." *Id.* at 1486. Unlike the plaintiffs in *North Side Lumber*,

Plaintiff in this case is not asking for a declaration of the federal regulations' effect on its contract rights against the Government, whatever the content of those rights might be. Rather, Plaintiff is asking the Court to determine and enforce its rights under the Repayment Contract. Such a claim is not governed by *North Side Lumber*. *See Tucson Airport Auth.*, 136 F.3d at 647.

**B.  Counts Three and Five.**

Counts three and five allege violations of due process with respect to Defendants' decisions to terminate water deliveries and approve a $30-per-acre assessment rate for fiscal year 2005. Doc. #1 ¶¶ 90-93, 98-102. The question of jurisdiction over these claims is more difficult than the question of jurisdiction over the other counts. For the reasons that follow, however, the Court concludes that these claims also must be dismissed.

Plaintiff alleges in count three that the decision to terminate water deliveries has deprived Plaintiff "of a vested property right to water." Doc. #1 ¶ 93. Plaintiff alleges in count five that the decision to approve a $30-per-acre assessment and the refusal to provide Plaintiff access to Project records has deprived Plaintiff "of vested property rights." *Id.* ¶¶ 100, 102. The Ninth Circuit "has held that constitutional claims based on a *contractual property interest* fall within the Tucker Act and may not be brought in district court." *Doe*, 329 F.3d at 1142 (citing *Tucson Airport Auth.*, 136 F.3d at 647-48; emphasis added). The initial question, then, is whether the property rights Plaintiff claims to have lost derive from contract or some other source.

Count three alleges that the lost property is water – water lost when the Acting Project Manager decided to terminate water deliveries. *See* Doc. #1 ¶¶ 91-93. Count five appears to be focused on the Plaintiff's property interest in money – the Assistant Secretary's approval of the FY 2005 O&M assessment – and, arguably, in access to Project records – the BIA's refusal to grant Plaintiff access to such records. *Id.* ¶¶ 99-102. The sources of Plaintiff's property interest in Project water are the contracts, statutes and regulations establishing Plaintiff's right to that water. The sources of Plaintiff's interest in the money paid as assessments would be Plaintiff's ownership of that money and the

1   general laws that govern ownership of financial assets. The source of Plaintiff's right of
2   access to Project records, if it could be called a property right, would appear to be the
3   Repayment Contract provisions affording such access. *Id.* Thus, the sources of the
4   property interests at issue in counts three and five are both contractual and legal. This
5   combination does not render an obvious answer to the jurisdictional question. The Ninth
6   Circuit teaches that constitutional claims based on a "contractual property interest" fall
7   within the Tucker Act and may not be brought in district court, but has not clearly
8   answered the question of whether partially-contract-based property interests may underlie
9   a due process claim in district court. *See Doe*, 329 F.3d at 1142.

10   Closer consideration of counts three and five convinces the Court, however, that
11   jurisdiction should be declined because adjudication of the claims necessarily would entail
12   consideration and construction of the Repayment Contract. Count three concerns
13   termination of Plaintiff's water supply. Defendants' right to terminate that supply is
14   granted in the Repayment Contract. *See* Doc. #1 Ex. 3 at 20. Count five concerns the FY
15   2005 O&M assessment. The procedures for establishing such an assessment are also
16   found in the Repayment Contract. *Id.* at 7-8, 16. Plaintiff's access to Project records, also
17   an issue in count five, likewise is addressed in the Repayment Contract. *Id.* at 19. Thus,
18   even though Plaintiff frames counts three and five as due process claims, adjudication of
19   those claims would entail consideration of the Repayment Contract terms that govern
20   Defendant's challenged actions. The Court concludes that this necessary examination of
21   contractual issues renders Plaintiff's due process claims sufficiently contractual to deprive
22   the Court of jurisdiction under the Tucker Act. The Ninth Circuit has held that "the Tucker
23   Act prevents constitutional claims that are dependent on rights under a government
24   contract from being brought in the district court." *Tucson Airport Auth.*, 136 F.3d at
25   647-48. Subsequent Ninth Circuit cases have described this holding as "broad" and have
26   noted that it differs from the holdings of other courts which permit contract-related
27   constitutional claims to be asserted in district court. *Doe*, 329 F.3d at 1142 n.4. Because
28   counts three and five would entail an evaluation of contracts between Plaintiff and

Defendants, the Court concludes that they must be dismissed for lack of jurisdiction.

### C. Count Ten.

Plaintiff alleges in count ten that Defendants have breached their fiduciary duty to Plaintiff and its landowners by, among other things, overcharging for O&M costs in the fiscal year 2005 assessment and refusing to disclose the Project's records and books. Doc. #1 ¶ 128. Although count ten sounds in tort, it is rooted in the contractual relationship between the United States and Plaintiff. Count ten explicitly alleges that the Plaintiff's landowners entrusted their water rights to the United States through the Landowners' Agreements with the Secretary of the Interior. *Id.* ¶ 126 (citing Ex. 2 at 5-6). The complaint further alleges that, pursuant to the Repayment Contract, the O&M charge to be paid by Plaintiff "must be 'fixed annually by the Secretary of the Interior'" and Defendants must "make the books and accounts of the Project available to [Plaintiff]." *Id.* ¶¶ 20, 71 (citing Ex. 3 at 8, 19). Because count ten "is essentially for breach of contract, the Tucker Act does apply, even though the breach could also be said to be tortious." *Woodbury v. United States*, 313 F.2d 291, 296 (9th Cir. 1963). The Court accordingly lacks subject matter jurisdiction over count ten. *See id.* (holding that the district court lacked jurisdiction over a breach of fiduciary duty claim because "the claim [was] in substance a breach of contract claim").[3]

## II. The Motion to Transfer.

Defendants state that, pursuant to 28 U.S.C. § 1631, the Court must transfer the claims over which it lacks jurisdiction to the Court of Federal Claims if it is in the interest of justice to do so. Doc. #16 at 13. Plaintiff requests that "any claims over which the Court finds jurisdiction lacking be transferred to the Court of Federal Claims as appropriate under 28 U.S.C. § 1631." Doc. #18 at 16.

The Court may transfer claims to the Court of Federal Claims only if the claims

---

[3] Plaintiff's reliance on *Cobell v. Norton*, 240 F.3d 1081 (9th Cir. 2001), is misplaced because that case involved the alleged breach of fiduciary duties "grounded in the very nature of the government-Indian relationship." *Id.* at 1086.

1  "could have been brought" there at the time they were filed. 28 U.S.C. § 1631. As Plaintiff
2  acknowledges, however, the Court of Federal Claims "can provide no remedy for the
3  [Plaintiff's] claims" because it "does not have jurisdiction to hear [Plaintiff's] requests for
4  equitable and prospective relief[.]" Doc. #18 at 6-7; *see Tucson Airport Auth.*, 136 F.3d at
5  646; *N. Side Lumber*, 753 F.2d at 1485. The Court accordingly must deny the motion to
6  transfer and will dismiss counts two through six and eight through ten for lack of subject
7  matter jurisdiction. *See Gilbert v. DaGrossa*, 756 F.2d 1455, 1458 (9th Cir. 1985) ("Where
8  a suit has not been consented to by the United States, dismissal of the action is
9  required."); *Charles v. Rice*, 28 F.3d 1312, 1322-23 (1st Cir. 1994) (holding that the transfer
10 of a claim to the Court of Federal Claims "would be to no avail" because that court lacked
11 jurisdiction to hear the claim); *Billops v. Dep't of the Air Force*, 725 F.2d 1160, 1164 (8th Cir.
12 1984) (same).

13 **III.   Conclusion.**

14 The Court recognizes that its decision "imposes on [Plaintiff] a burden that perhaps
15 may be both inefficient and unfair." *Tucson Airport Auth.*, 136 F.3d at 648. The Court's
16 decision, however, is "dictated by the principles of sovereign immunity and the limited
17 jurisdiction of federal courts, which only Congress – and not this court – can change." *Id.*
18 As the Ninth Circuit has explained: "The fact that the Court of Federal Claims has no
19 power to grant [equitable relief on] a contract does not mean that a suit for [equitable relief]
20 can be brought in the district court. The Tucker Act is a limited waiver of sovereign
21 immunity for contract actions; equitable contract remedies denied to the Court of Federal
22 Claims are not within the waiver and may not be enforced against the United States at all."
23 *Doe*, 329 F.3d at 1141-42; *see M-S-R Pub. Power Agency v. Bonneville Power Admin.*, 297
24 F.3d 833, 840 n.7 (9th Cir. 2002) (dismissing claims that "sound[ed] in contract" and stating:
25 "Where, as here, petitioner seeks equitable relief rather than damages, he may go
26 wanting.") (citing *N. Star Alaska*, 9 F.3d 1430, 1432 (9th Cir. 1993)).

27 **IT IS ORDERED** that Defendants' motion to dismiss and/or transfer (Doc. #16) is
28 **granted in part** and **denied in part** as set forth in this order.

1  The Court will set a status conference by separate order.

2  DATED this 14th day of December, 2005.

_____
David G. Campbell
United States District Judge